

# The Attorney General of Texas

May 30, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Charles W. Evans
Chairman
House Committee on Government
  Organization
P. O. Box 2910
Austin, Texas   78769

Opinion No.  MW-352

Re:  Questions regarding proposed legislation placing the National Guard Armory Board under the administrative control of the Adjutant General's Department

Dear Representative Evans:

You inform us that proposed legislation may amend articles 5931-1 — 5931-13, V.T.C.S., the provisions governing the National Guard Armory Board.  House Bill 2082 would amend article 5931-4 by adding subsection (b) requiring the armory board to use the personnel of the Adjutant General's Department to administer the act.  It would also authorize the board to obtain services necessary to administer the act from other state agencies and to compensate them for these services.  The bill would in addition delete from article 5931-5 subsection 4, which presently authorizes the board to hire an executive secretary, other officials, lawyers, agents and employees, and to prescribe their duties and fix their compensation.  The other powers of the armory board would be left intact.  These include the power to sue and be sued, to make contracts, to acquire property, to construct buildings, and to issue and sell bonds, debentures, and other evidence of indebtedness to fund authorized projects.

You ask the following questions concerning the proposed legislation:

> Would such action:  (1) have the effect of prohibiting the National Guard Armory Board from borrowing money, or issuing bonds, debentures, or other evidences of indebtedness for the purpose of constructing, remodeling, repairing, and equiping one or more buildings; and (2) would the recommendation violate or cause to be violated by the National Guard Armory Board any existing covenants, agreements, contracts, or other obligations of the board relating to the indebtedness of the board?

We answer both of your questions in the negative.

We note initially that the armory board could have elected to use personnel of the Adjutant General's Office under the provisions of the Interagency Cooperation Act, article 4413(32), V.T.C.S.  The armory board is a state agency within the provisions of this act.  Section 2 defines "agency" to include "board."  The armory board is a "state agency" for purposes of the Sunset Act.  V.T.C.S. art. 5931-1a; see V.T.C.S. art. 5429k, §1.02(1)(A).  It has been a department of state government for purposes of requesting Attorney General Opinions.  See Attorney General Opinions H-24 (1973); M-890 (1971); M-396 (1969); C-242 (1964); O-5505 (1943).  It is funded in the General Appropriations Act, which appropriates money "for the support of the Judicial, Executive and Legislative Branches of the State Government. . . ."  Acts 1979, 66th Leg., ch. 843, at 2445, 2453, 2591.  See Id. art. III, §1, at 2564.  See also Texas National Guard Armory Board v. McCraw, 126 S.W. 2d 627, 640 (Tex. 1939) (dissenting opinion).  Although Attorney General Opinion O-5505 (1943) stated that the armory board was "more nearly like a municipal corporation or city than a State department," that was for the purpose of determining that the board did not have to request rental space through the Board of Control. A governmental entity may be a state agency for purposes of some statutes and a political subdivision for others.  Compare Attorney General Opinion M-316 (1968) with Attorney General Opinion M-1266 (1972) (community mental health centers).

As a state agency within article 4413(32), V.T.C.S., the armory board may enter into a contract with other agencies of the state "for furnishing necessary and authorized special or technical services, including the services of employees. . . ."  Sec. 3.  Contracts are to be approved by the board of control which must consider "[w]hether the proposed arrangements serve the interests of efficient and economical administration of the State Government."  Sec. 5(b).

Thus, House Bill 2082 merely requires of the board what was formerly a legal option under the Interagency Cooperation Act.  Contracting under this statute for the services of adjutant general personnel does not affect the power of the armory board to issue bonds or other evidences of indebtedness under section 8 of article 5931-5.  It simply permits the board to operate more efficiently by pooling resources with the adjutant general or other state agencies to acquire the services of employees.

We note that the indebtedness which the armory board may incur is not indebtedness within sections 49 and 50 of article III of the constitution.  Texas National Guard Armory Board v. McCraw, 126 S.W. 2d 627 (Tex. 1939); Charles Scribner's Sons v. Marrs, 262 S.W. 722 (Tex. 1924).  Constitutional "debt" is an obligation supported by tax monies, for which there must be specific constitutional authorization.  The National Guard Armory Board has no authority to issue tax-supported obligations.  Its authority extends only to the issuance of revenue bonds, which are not debt in the constitutional sense.  See generally City of Dayton v. Allred, 68 S.W. 2d 172 (Tex. 1934), Atkinson v. City of Dallas, 353 S.W. 2d 275 (Tex. Civ. App. - Dallas 1961, writ ref'd n.r.e.), cert. denied, 370 U.S. 939 (1962).  The act granting

power to the board to issue revenue bonds, payable from lease revenues from the Adjutant General's Department, was held constitutional in Texas National Guard Armory Board v. McCraw, supra. The conduit financing thus approved is not a debt of the state. The legislature appropriates funds to the adjutant general, from which said department pays rent to the armory board for the armories constructed by the board. Those rents are the only security for the board's revenue bonds issued to construct the armories; the full faith and credit of the state does not lie behind the bonds.

An amicus brief submitted for the armory board advances the position that by causing the board to utilize administrative staff of the adjutant general, the board loses all independence, that, in effect, once the board must utilize the staff of the adjutant general, the adjutant general would be both lessor (presently the role of the armory board) and lessee. In terms of indebtedness incurred by the board, according to the position advanced by the amicus brief, the adjutant general would be both the issuer of the bonds and the security for the payment of same; he would "in one capacity pledge to himself in another capacity the amounts which he would pay as rentals to meet the bond obligations." Brief of attorneys for the armory board at page 9. We submit that no substantive change has actually occurred in the security for the bonds or in the issuer of the bonds. The board still retains, inter alia, the right to sue or to be sued, the right to enter contracts, to acquire property, to issue bonds. The security for such bonds has not changed. That security is still in the lease payments of the adjutant general to the armory board, not out of the general revenues of the state, but from the state appropriation to the adjutant general.

The board retains by the proposed amendment all the characteristics it had save the ability to hire its own administrative staff. The adjutant general is still required to make lease payments, subject to a legislative appropriation for such. The board can still be brought to court in event of a default. Unless there is some infirmity in the legislature ordering to be done what could be done optionally formerly, we can see no way in which the security of the board's outstanding bonds or the ability to issue future bonds would be impaired.

In holding the act establishing the National Guard Armory Board constitutional the Texas Supreme Court stated:

> ... The Legislature has seen fit to enact this law for the purpose of procuring sites and erecting armories, and has furnished the method for financing the plan. The wisdom or expendiency of this law is left exclusively to the Legislature to determine, and courts are concerned only with its validity.

Texas National Guard Armory Board, supra, at 631. Since the court found the law valid, implementation is clearly left in the hands of the legislature. The court certainly appears to recognize the plenary power of the legislature to prescribe the method of implementation in the constitutionally valid undertaking. See also Attorney General Opinion O-5505 (1943) at 11 (opinion also cites powers of the board, of which

the power to maintain an administrative staff is one power out of seven enumerated). There is no negative effect on the power of the armory board to issue bonds brought about by mandating that the board should utilize administrative services of the adjutant general. The board retains all powers which would go to their ability to issue bonds and secure such bonds or other evidences of indebtedness.

The second part of your query concerns the possible violation of existing covenants by the change in the act. Since the board effected an advance refunding under article 717k, V.T.C.S., the proceedings relating to such refunding contain all extant covenants. See National Guard Armory Board Refunding Bonds, Series 1979, Resolution Authorizing the Issuance of Bonds, August 25, 1979, section 22. These covenants contain no guarantee to maintain the administration as then constituted. The covenants do pledge efficient and economical management (Resolution, supra, section 22, at (c)). A purpose of the Interagency Cooperation Act is to serve efficient and economical administration of state government. The board could effect through this statute the same administrative changes that the proposed amendment to the enabling legislation mandates. No violation of outstanding covenant is effected by the proposed change. Bondholders have no vested right against a change in the law, unless such change substantially impairs their contract. Compare Norton v. Kleberg County, 231 S.W. 2d 716 (Tex. 1950) with Norton v. Tom Green County, 182 S.W. 2d 849 (Tex. Civ. App - Austin 1944, writ ref'd), cert. denied, 325 U.S. 861 (1948). See also Fazekas v. University of Houston, 565 S.W. 2d 299 (Tex. Civ. App. - Houston [1st District] 1978, writ ref'd n.r.e.), appeal dismissed, 440 U.S. 952 (1979) and Life Insurance Company of Virginia v. Sanders, 62 S.W. 2d 348 (Tex. Civ. App. - El Paso 1933, no writ). Since the Interagency Cooperation Act was in existence at the time of the refunding, the bondholders took the bonds with notice of such legislation and with notice that the board could voluntarily undertake to use another entity's administrative staff. Were this to comprise a substantial impairment of their contract, there would have been covenants proscribing utilization of the Interagency Cooperation Act in the bond resolution. As we have demonstrated above, mandating what could have been voluntarily undertaken is permissible. If the voluntary act would not have impaired existing covenants, there is no basis for concluding that legislation mandating the act will impair covenants, and certainly no basis for concluding that the mandate goes to substantial rights under the contract.

## S U M M A R Y

Legislation requiring the armory board to utilize the administrative facilities of the adjutant general will not preclude the board from issuing bonds or other evidences of indebtedness, nor will such action violate existing covenants relating to the board's indebtedness.

Very truly yours,

MARK  WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY, III
Executive Assistant Attorney General

Prepared by Susan L. Garrison
Assistant Attorney General
Susan Lee Voss

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Rick Gilpin
Jim Moelinger
Susan Lee Voss